## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

DR. BRETT WIATER
Birmingham, MI 48009
On behalf of himself
and all others similarly situated

     Plaintiff,

vs.

STELLANTIS, N.V. and FCA US LLC

     Defendants.

Demand for Jury Trial
Case No.

COMPLAINT – CLASS ACTION

YATOOMA LAW, P.C.

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Dr. Brett Wiater, individually and on behalf of all other persons similarly situated, for his complaint for damages against Defendants Stellantis N.V. and FCA US LLC ("Defendants").

## NATURE OF ACTION

1.    This is a class action claim arising from a defect in Defendants' vehicles which make them easy to steal, unsafe, and worth less than they should be, if they were not defective.

2.    Defendants did not disclose this defect, which is a material fact, and a fact that a reasonable person would rely on when purchasing a vehicle.

3.    During the relevant class period, Defendants sold these Defective Vehicles (as defined below) at multiple locations throughout the state of Michigan and the United States.

4.    During the relevant class period, Defendants manufactured, designed, and put into the stream of commerce the Defective Vehicles.

5.     Defendants did so without disclosing the fact that the Defective Vehicles had a defect which made them easy to steal, unsafe, and worth less than they should be, if they did not have the defect.

6.     Even now, Defendants admit there is a theft and safety problem with the Defective Vehicles but refuse to fix them, compensate consumers, or otherwise take actions to solve the problems their Defective Vehicles are causing.

## PARTIES

7.     Plaintiff is a resident and citizen of the state of Michigan. Plaintiff resides in Oakland County, in the Eastern District of Michigan.

8.     Plaintiff brings this action on his own behalf and as a representative of a class of persons who purchased and/or own a Defective Vehicle that was manufactured, produced, distributed, and/or sold by Defendants.

9.     This matter arises out of negligent acts, errors, and omissions committed by the Defendants against Plaintiff causing Plaintiff and the putative class to suffer damages.

10.     Plaintiff brings this action on his own behalf and as representatives of a class of similarly situated persons to recover damages for violations of the Michigan Consumer Protection Act ("MCPA"), MCL §445.901, et seq., the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 et seq., among other claims, for economic and injunctive relief against Defendants which manufactured, designed, tested, distributed, promoted, and sold the Defective Vehicles.

11.     At the time the Defective Vehicle was purchased, Plaintiff was unaware that the vehicles were defective and that they were not fit for the ordinary purposes for which they are used in that they are easy to steal, unsafe, and worth less than they should be, if they were not defective.

YATOOMA LAW, P.C.

12. Specifically, Plaintiff Dr. Brett Wiater purchased a 2022 Ram TRX at Golling Chrysler Dodge Jeep Ram in Bloomfield Hills for personal, family, or household use. Because of the defects at issue in this case, it was stolen in April, 2023.

13. Plaintiff, on behalf of himself and the putative class, seeks a refund for monies paid as a result of their purchases of the Defective Vehicles, compensation for other losses incurred as a result of the defect, and further seeks injunctive relief, enjoining Defendants from selling the Defective Vehicles, and requiring Defendants to fix the defect.

14. On information and belief, Defendant, Stellantis, N.V., is a corporation that maintains its principal place of business at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.

15. On information and belief, Defendant Stellantis, N.V. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

16. On information and belief, Defendant FCA US, LLC is a corporation duly organized and existing under the laws of the state of Delaware and duly authorized to conduct business in the State of Michigan.

17. On information and belief, Defendant FCA US, LLC maintains its principal place of business at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.

18. On information and belief, Defendant FCA US, LLC is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

## JURISDICTION AND VENUE

19.     This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this Court has original jurisdiction of all civil actions arising under the laws of the United States (*i.e.,* 15 U.S.C. § 2301).

20.     This Court has personal jurisdiction over Defendants in that Defendants transact business within the state of Michigan and committed one or more tortious acts within the state of Michigan.

21.     Defendants transacted business and/or committed tortious acts within the state of Michigan. Defendants design, manufacture, distribute, and/or sell dangerous and/or Defective Vehicles in Michigan. Defendants placed the Defective Vehicles and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in Michigan from which Plaintiff's claims arise.

22.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that the events that substantially give rise to the claims in this case occurred in this District and in that Plaintiff purchased his Defective Vehicle in Oakland County, Michigan. Further, Plaintiff resides in Oakland County, in the Eastern District of Michigan.

23.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendants' improper conduct alleged in this complaint occurred in, was directed from, and emanated from this judicial district, because Defendants have caused harm to Class Members residing in this district, and/or because the Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

24.     The Defective Vehicles made the subject of this suit, which are manufactured, designed, produced, distributed, and sold by Defendants, are easy to steal, unsafe, and worth less than they would be, if they were not defective.

25.     Defendants manufacture, design, produce, distribute, and sell the "Defective Vehicles," which are hereby defined as: "all Dodge models from 2019-2023". All of the Defective Vehicles share the same defects, and therefore, an owner of any one of them may bring a class action on behalf of the entire class.

26.     Defendants concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiff, in Defendants' advertising, labeling, or otherwise that these vehicles are defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be, if they were not defective.

27.     One of the reasons why the Defective Vehicles are stolen so easily is that the Defective Vehicles do not comply with Federal Motor Vehicle Safety Standard ("FMVSS") 114. FMVSS 114, S.5.1.1 requires:

> Each vehicle must have a starting system which, whenever the key is removed from the starting system, prevents:
>
> > (a) The normal activation of the vehicle's engine or motor; and
> >
> > (b) Either steering, or forward self-mobility, of the vehicle, or both.

28.     The Defective Vehicles do not comply with this FMVSS in that when the key is removed from the starting system, neither steering nor forward self-mobility is prevented. If it were, the Defective Vehicles would not be stolen at alarming rates.

YATOOMA LAW, P.C.

29. The Defective Vehicles are defective in that, among other things, Defendants manufactured and designed them without functional anti-theft systems.

30. Defendants knew or should have known the Defective Vehicles were defective in this manner but failed and refused to disclose these defects to customers, despite having the capability and means to do so.

31. Defendants had the capability and means to add a fully functional anti-theft system, yet they failed to do so.

32. Defendants also knew just how dangerous it was to not have a fully functional anti-theft system.

33. A vehicle that has been stolen, or can be too easily stolen, is neither safe nor reliable.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of himself and the following class of similarly situated persons:

    a.  A "Nationwide Class" based on claims of unjust enrichment, violations of the Magnuson Moss Warranty Act, and/or breach of express and/or implied warranty consisting of all customers who purchased any of the Defective Vehicles in the United States within the past five years; or

    b.  A "Nationwide Class" based on claims of unjust enrichment, negligence, and design defect consisting of all consumers who own any of the Defective Vehicles in the United States; or

    c.  A "Michigan Sub-Class" based on claims brought under the Michigan Consumer Protection Act ("MCPA"), and for unjust enrichment, and/or breach

YATOOMA LAW, P.C.

YATOOMA LAW, P.C.

of implied and/or express warranty consisting of all persons who purchased any of the Defective Vehicles in the state of Michigan for personal, family, business, or household purposes within the applicable statute of limitations period; or

d. A "Michigan Sub-Class" based on claims of unjust enrichment, negligence, and design defect consisting of all consumers who own any of the Defective Vehicles in Michigan.

35. Excluded from each Class or Sub-Class are Defendants, including any parent, subsidiary, affiliate, or controlled person of Defendants; Defendants' officers, directors, agents, or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families. Also excluded from the Class or Sub-Class are those claiming they have suffered a personal injury as result of the Defective Vehicles, as well as residents of Wisconsin.

36. Each of the proposed Nationwide Class or Michigan Sub-Class meets all requirements for class certification. The Class or Sub-Classes satisfy the numerosity standards. The Class or Sub-Classes are believed to number in the thousands of people. As a result, joinder of all Class or Sub-Class Members in a single action is impracticable. Class or Sub-Class Members may be informed of the pendency of this Class Action by, among other methods, direct, published and/or broadcast notice.

37. There are questions of fact and law common to the Nationwide Class or Michigan Sub-Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class or Sub-Class arising from Defendants' actions include, without limitation, the following:

a. Whether Defendants continued to manufacture, market, distribute, and sell the Defective Vehicles notwithstanding their knowledge of the defects' dangerous nature and risks of harm;

b. Whether Defendants knowingly omitted, suppressed, or concealed material facts about the unsafe and defective nature of the Defective Vehicles from the consuming public;

c. Whether the Defective Vehicles are fit for their ordinary purposes;

d. Whether the Defective Vehicles proved reliable transportation;

e. Whether the Defective Vehicles are safe;

f. Whether the Defective Vehicles contain a design defect;

g. Whether Defendants' conduct violated the MCPA; and/or

h. Whether Defendants' conduct violated the Magnuson Moss Warranty Act.

38. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity, to other available methods for the fair and efficient adjudication of this controversy.

39. A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members or Sub-Class Members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Nationwide Class Members or Michigan Sub-Class Members to protect their interests.

40. The claims of Plaintiff are typical of the claims of members of the Nationwide Class and the Michigan Sub-Class. Upon information and belief, the Defective Vehicles all share the

same defects. Upon information and belief, the labels, manuals, advertising, and disclosures concerning the Defective Vehicles all fail to reasonably disclose the presence of these defects. Therefore, the information withheld by Defendants from Plaintiff and all Nationwide Class or Michigan Sub-Class members was identical.

41. Plaintiff is an adequate representative of the Nationwide Class and Michigan Sub-Class because he is a member of both Classes and his interests do not conflict with the interests of the members of the Nationwide Class or Michigan Sub-Class he seeks to represent. The interests of the members of the Nationwide Class or Michigan Sub-Class will be fairly and adequately protected by the Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex class action litigation.

42. Plaintiff seeks a refund of some or all monies paid as a result of the purchase of the Defective Vehicle that occurred following Defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of the Defective Vehicle.

43. Plaintiff also seeks compensation for damages incurred beyond the reduced value of the Defective Vehicles, including but not limited to the increase in insurance premiums he is or may be facing due to the design defect, damages caused by the theft of his vehicle, and the stigma associated with owning or possessing the Defective Vehicles.

44. Plaintiff specifically excludes from this class action any damages, losses, or other relief of any kind arising from the personal injuries suffered by those class members personally injured by the Defective Vehicle based on the defects.

45. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of

the Nationwide Class or Michigan Sub-Class who suffered harm to bring a separate action given the damages at issue compared to the costs of litigating each individual claim. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Nationwide Class Members or Michigan Sub-Class Members.

46.     Class action treatment of the claims in this action is the superior method of resolution with respect to concerns of efficiency, fairness, and equity over other available methods of adjudication.

47.     Class action treatment is appropriate in this case because Defendants acted, or refused to act, in a manner that was generally applicable to – and often identical to – each member of the Nationwide Class or Sub-Class. Defendants provided the Defective Vehicles with the same defect to, and withheld the same information from, all members of the Nationwide Class or Michigan Sub-Class and sold the Defective Vehicles with the same defects.

48.     Notice can be provided to Class Members or Sub-Class Members by using techniques and forms of notice similar to those customarily used in other defective-product cases and complex class actions.

**CLAIMS FOR RELIEF**

**COUNT I – VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (MCPA) – MCL §445.901 ET. SEQ.**

49.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

50.     Plaintiff brings this Count against Defendants on behalf of all members of the Michigan Sub-Class.

51.     The transaction involved in this case falls within the Michigan Consumer Protection Act (MCPA) MCL 445.901 et. seq.

52. The conduct of Defendants as described above violates the following sections of the MCPA: MCL 445.903(1)(e), MCL 445.903(1)(s), MCL 445.903(1)(y), MCL 445.903(1)(bb) and MCL 445.903(1)(cc).

53. Defendants breached the MCPA and are therefore liable to Plaintiff and the Class because, without limitation, the Defective Vehicles share common design defects, including that they are incredibly susceptible to theft.

54. Defendants knew or should have known that the Defective Vehicles lacked functional anti-theft systems, among other design failures, and that they were failing to disclose this material fact, thereby misrepresenting the safety, ease of theft, and value of the Defective Vehicles.

55. Defendants failed to disclose the defects to Plaintiff and the other Class members even though Defendants were aware or should have been aware of the defects.

56. As a result of Defendants' violation of the MCPA, Plaintiff has suffered actual damages.

## COUNT II – VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT

57. Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

58. Plaintiff brings this Count against Defendants on behalf of members of the Nationwide Consumer Class.

59. This Court has jurisdiction to decide claims brought under 15 U.S.C. §2301 by virtue of 28 U.S.C. § 1332(a)-(d).

60. The Defective Vehicles are "consumer products" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(1).

YATOOMA LAW, P.C.

61.     Plaintiff and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

62.     Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

63.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

64.     Defendants provided Plaintiff and the other Class members with an implied warranty of merchantability in connection with the purchase of their Defective Vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

65.     As a part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for the ordinary purpose of passenger motor vehicles, were not far easier to steal than other vehicles, and were not unsafe and/or unreliable due to the ease at which they can be stolen.

66.     Defendants breached this implied warranty and are therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1) because, without limitation, the Defective Vehicles share common design defects, including that they are incredibly susceptible to theft.

67.     These defects render the Defective Vehicles deficient, in that they do not provide safe and reliable transportation, as they are tremendously easy to steal.

68.     A vehicle that has been stolen, or can be too easily stolen, is neither safe nor reliable.

69.     Defendants provided Plaintiff and the other Class members with an express written warranty in connection with the purchase or lease of their Defective Vehicles, as described further

below, that is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

70.     Defendants made written affirmations of fact that the Defective Vehicles would be free of defects that would prevent ordinary use.

71.     Upon information and belief, Defendants affixed labeling and other written affirmations making specific, performance-related representations related to the nature of the Defective Vehicles, including expressly warranting that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

72.     Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class members Defective Vehicles that are defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be, if they were not defective.

73.     Any efforts to limit the express and implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void. Any limitations on the express and implied warranties are procedurally unconscionable. Defendants purposefully misrepresented the Defective Vehicles to consumers.

74.     Additionally, there was unequal bargaining power between Defendants, on the one hand, and Plaintiff and the other Class members, on the other.

75.     Any limitations on the express and implied warranties are substantively unconscionable.

YATOOMA LAW, P.C.

76. Defendants knew or should have known that the Defective Vehicles lacked functional anti-theft systems, among other design failures, and that they were failing to disclose this material fact, thereby misrepresenting the safety, ease of theft, and value of the Defective Vehicles.

77. Defendants failed to disclose the defects to Plaintiff and the other Class members even though Defendants were aware of the defects.

78. Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers and agents.

79. Specifically, Plaintiff and each of the other Class members are intended third-party beneficiaries of the implied and written warranties.

80. The dealers and agents were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided for the Defective Vehicles: the warranty agreements were designed for and intended to benefit consumers.

81. Finally, privity is also not required because the Defective Vehicles are unsafe and hazardous instrumentalities due to, among other matters, the lack of functional anti-theft systems.

82. Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

83. Furthermore, affording Defendants an opportunity to cure their breach of warranties would be unnecessary and futile.

YATOOMA LAW, P.C.

84.     At the time of sale or lease of each Defective Vehicle, the Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

85.     Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff resorts to an informal dispute resolution procedure and affords Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

86.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.

87.     The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

88.     Plaintiff, individually and on behalf of the other Class members, seeks all damages permitted by law, including diminution in the value of their Defective Vehicles, in an amount to be proven at trial.

89.     In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

90.     Additionally, Plaintiff and each of the other Class members are entitled to equitable relief under 15 U.S.C. § 2310(d)(1), including the expense associated with Defendants being required to fix the Defective Vehicles.

## COUNT III - UNJUST ENRICHMENT

91.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

92.     Plaintiff and the Nationwide Class and/or Michigan Sub-Class members purchased Defective Vehicles that they would not have purchased had they known that the Defective Vehicles are defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be, if they were not defective.

93.     The Defendants were therefore unjustly enriched at the expense of and to the detriment of the Plaintiff and the Class.

94.     Plaintiff and the Nationwide Class and/or Michigan Sub-Class are therefore entitled to restitution from the Defendants, and seek an order requiring the Defendants to disgorge all profits, benefits, and other compensation that Defendants obtained from the sale of these products.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT IV – BREACH OF IMPLIED WARRANTY

95.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

96.     Defendants are merchants with respect to the sale of the Defective Vehicles purchased by Plaintiff.

97.     Defendants, by selling the Defective Vehicles, impliedly warranted that the Defective Vehicles were merchantable with respect to goods of that kind.

98.     The Defective Vehicles sold by Defendants and purchased by Plaintiff did not conform with the implied promises made with respect to the labels and material that accompanied the product. Specifically, by failing to reasonably disclose that the Defective Vehicles did not have

functional anti-theft systems, Defendants implied that the Defective Vehicles were not far easier to steal than other vehicles, were thereby safe, and were worth as much as vehicles that possessed functional anti-theft systems.

99.     As a result of having no functional anti-theft systems, among other defects, the Defective Vehicles were not merchantable and Defendants breached their implied warranty of merchantability with respect to the Defective Vehicles.

100.     Had Plaintiff known that the Defective Vehicles lacked a functional anti-theft system, among other defects, making them far easier to steal, and were thereby unsafe and worth less than their sales price, he would not have purchased it or would have paid significantly less for the vehicle. As a result of Defendants' breach of implied warranty, Plaintiff and the Nationwide Class and/or Michigan Sub-Class members have suffered economic injuries.

101.     Defendants are being provided notice by receipt of demand made by Plaintiff on behalf of themselves and the putative class through the filing of this Complaint. In addition, Defendants have actual notice of the defect.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT V – BREACH OF EXPRESS WARRANTY

102.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

103.     Defendants are and at all relevant times were merchants with respect to motor vehicles under U.C.C. § 2-313.

104.     Upon information and belief, in the course of selling its Defective Vehicles, Defendants expressly warranted in writing that the Defective Vehicles were high quality, properly

YATOOMA LAW, P.C.

designed, in conformance with applicable federal standards, and at a minimum, would work properly.

105.    Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class members Defective Vehicles that are defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be, if they were not defective.

106.    Due to the Defendants' breach of warranties as set forth herein, Plaintiff and the Class assert as an additional and/or alternative remedy, as set forth in U.C.C. §§ 2-608 and 2-711, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the Class of the purchase price of all Defective Vehicles currently owned and for such other incidental and consequential damages as allowed under U.C.C. §§ 2-608 and 2-711.

107.    Defendants were provided notice of these issues, upon information and belief, by numerous communications sent by customers before or within a reasonable amount of time after the allegations of vehicle defects became public.

108.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT VI – NEGLIGENCE

109.    Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

110.    Defendants designed, manufactured, distributed, tested, sold, applied, used and/or supplied the Defective Vehicles at issue.

111.    Defendants held themselves out as a corporation capable of reasonably and prudently developing, manufacturing, marketing, supplying, testing, distributing, using, and

selling the Defective Vehicles at issue and therefore had the duty to have and exercise the knowledge of an expert on such product.

112.    Defendants knew or should have known that the Defective Vehicles contained defects including that, among other things, Defendants manufactured and designed them without functional anti-theft systems.

113.    Defendants knew or should have known that the Defective Vehicles are incredibly easy to steal.

114.    As designers, manufacturers, processors, packagers, distributors, marketers, sellers, users, appliers and suppliers of the Defective Vehicles, Defendants had a duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of designers, manufacturers, processors, packagers, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation, the duty to test its vehicles; the duty to acquire and maintain the knowledge of an expert; the duty to design, manufacture, process, distribute, market, sell, and/or supply its vehicles free from defects and/or latent defects; the duty to adequately warn consumers of vehicle defects and/or hazards, which duty continued even after the sale of Defective Vehicles; and the duty to market, advertise, sell and supply vehicles with adequate information and warnings about the unacceptable risk of theft their design failures create.

115.    Defendants failed to use due care under the circumstances and thereby breached its duties as set forth above and was careless and negligent in the performance of its said duties to Plaintiff and the Nationwide Class and/or Michigan Sub-Class members.

116.    Plaintiff used these Defective Vehicles in a manner ordinarily anticipated by Defendant.

117.     As a direct and proximate result of the dangerous and defective condition of the Defective Vehicles and Defendants' failure to warn of the dangers thereof, Plaintiff and the Nationwide Class and/or Michigan Sub-Class members have suffered economic injuries.

118.     These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle that is not defective. Other damages include, but are not limited to, the increase in insurance premiums that Plaintiff and Class members are facing or may face due to the design defect, and the stigma associated with owning or possessing the Defective Vehicles.

119.     At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Vehicles at issue, Defendants knew or should have known of the dangerous condition of the Defective Vehicles and supplied them without making any warning, instruction, or other precaution to prevent injuries or damages and thereby showed complete indifference to and/or conscious disregard for the rights and safety of others.

120.     Defendants specifically placed profits ahead of the health, rights, and safety of others by concealing material facts about the Defective Vehicles.

121.     Defendants' conduct of concealing material facts was negligent and negatively impacted the rights of Plaintiff and the Nationwide Class and/or Michigan Sub-Class members.

122.     As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT VII – STRICT LIABILITY, DESIGN DEFECT

123.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

124.     Defendants designed, manufactured, and/or supplied the Defective Vehicles in question within the ordinary course of its business.

YATOOMA LAW, P.C.

125.   Plaintiff purchased and owns a Defective Vehicle.

126.   The Defective Vehicles contain a design defect including that, among other things, Defendants manufactured and designed them without functional anti-theft systems. As a result, the Defective Vehicles are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be, if they were not defective.

127.   Defendants knew or should have known of the dangerous and defective nature of the Defective Vehicles at the time of their design, manufacture, sale, testing, transportation, distribution, supply, and use.

128.   Notwithstanding, Defendants failed to take safety precautions to prevent economic injury to Plaintiff and failed to warn and/or instruct Plaintiff and others of the defective and unreasonably dangerous nature of Defective Vehicles.

129.   Defendants' unreasonably dangerous Defective Vehicles directly and proximately caused economic injuries to Plaintiff and the Nationwide Class and/or Michigan Sub-Class members.

130.   Plaintiff drives his vehicle, then parks and leaves the vehicle unattended, which is a manner of use reasonably anticipated by Defendants.

131.   As a result of the Defective Vehicles' defect, which makes them incredibly easy to steal, they are unreasonably dangerous and defective when put to the use anticipated by Defendants.

132.   As a direct and proximate result of the dangerous and defective condition of Defendants' Defective Vehicles and Defendants' failure to warn consumers of the dangers thereof, Plaintiff and the Nationwide Class and/or Michigan Sub-Class members have suffered economic injuries.

133. These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle that is not defective. Other damages include, but are not limited to, the increase in insurance premiums Plaintiff and Class member are facing or may face due to the design defect, and the stigma associated with owning or possessing the Defective Vehicles.

134. At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Vehicles at issue, Defendants knew or should have known of the dangerous condition of the Defective Vehicles and supplied them without making any warning, instruction, or other precaution to prevent injuries or damages and thereby showed complete indifference to and/or conscious disregard for the rights and safety of others.

135. Defendants specifically placed profits ahead of the health, rights, and safety of others by concealing material facts about the Defective Vehicles.

136. The Defective Vehicles were unreasonably unsafe or unreasonably dangerous when they were designed, manufactured, and/or sold.

137. Defendants expected and intended that the product would reach consumers without changes.

138. Plaintiff suffered damages as a result of purchasing the Defective Vehicle.

139. At the time of Defendants' design, manufacture, processing, distribution, sale and/or use of the Defective Vehicle, Defendants knew or should have known of the dangerous condition of the Defective Vehicles and supplied them without making any warning, instruction, or other precaution to prevent injuries and thereby showed complete indifference to and/or conscious disregard for the safety of others. Defendants specifically placed profits ahead of the

YATOOMA LAW, P.C.

health and safety of others by concealing material facts about the Defective Vehicles' safety features.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendants as follows:

a. That the Court enter an order certifying the Class, appointing Plaintiff as representative of the Nationwide Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Nationwide Class;

b. Alternatively, that the Court enter an order certifying the Michigan Sub-Class, appointing Plaintiff as representative of the Michigan Sub-Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Michigan Sub-Class;

c. For a judgment against Defendants for the causes of action alleged against it;

d. For damages in an amount to be proven at trial;

e. For appropriate injunctive relief, enjoining the Defendants from selling the Defective Vehicles and ordering them to fix or replace the Defective Vehicles;

f. For attorneys' fees;

g. For Plaintiff's costs incurred; and

h. For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and class members similarly situated hereby demand a trial by jury.

Respectfully Submitted,

Dated: June 13, 2023

*/s/Norman A. Yatooma*
**YATOOMA LAW, P.C.**
Norman A. Yatooma (P54746)
Brian T. Hilderley (P60136)
Attorneys for Plaintiff
100 Renaissance Center
Ste. 2-101 #43437
Detroit, MI 48243